**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

RODRIGO TREVINO,                    *

        *Plaintiff*,                    *

      v.                    *

        *                    No. 8:24-cv-03264-TDC

UNIVERSITY OF MARYLAND                    *
COLLEGE PARK, ET AL.,
        *
        *Defendants*.

*   *   *   *   *   *   *   *   *   *   *   *

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS COUNTS II, IV, VI, AND VIII**

ANTHONY G. BROWN
Attorney General of Maryland

*s/ Michael E. Rowan*
MICHAEL E. ROWAN
Federal Bar No. 27660
Assistant Attorney General
Office of the Attorney General
200 St. Paul Place, 17th Floor
Baltimore, Maryland 21202
mrowan@oag.state.md.us
(410) 576-6476
(410) 576-6437 (facsimile)

January 21, 2025                    *Attorneys for Defendants*

## TABLE OF CONTENTS

Page

FACTUAL ALLEGATIONS ................................................................. 2

LEGAL STANDARD ......................................................................... 6

ARGUMENT ...................................................................................... 7

    I.           DR. TREVINO'S TITLE VI CLAIMS SHOULD BE DISMISSED BECAUSE HE FAILS TO PLEAD THE THRESHOLD ELEMENTS OF THE CLAIMS. ...............7

    II.         DR. TREVINO'S CLAIM BROUGHT UNDER THE PRINCE GEORGE'S COUNTY CODE SHOULD BE DISMISSED BECAUSE THE UNIVERSITY HAS IMMUNITY FROM SUCH CLAIM. ............................................................10

    III.        DR. TREVINO'S CLAIMS BROUGHT UNDER § 1983 AGAINST THE INDIVIDUALLY NAMED DEFENDANTS SHOULD BE DISMISSED. .................13

        A.       Dr. Trevino's First Amendment Freedom of Speech Claim Should Be Dismissed Because His Complaints of Discrimination Did Not Involve a Matter of Public Concern........14

        B.       Dr. Trevino's Due Process Claim Should be Dismissed Because He Did Not Have a Property Interest in an Award of Tenure or Continued Employment at the University.................16

        C.       Dr. Trevino's Claims Against Defendants Cerrai and Wentworth Should Be Dismissed Because He Fails to Plead Sufficient Facts to Show Any Purported Misconduct by Them. .......................................................................................18

CONCLUSION....................................................................................20

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| RODRIGO TREVINO, | * |
| *Plaintiff*, | * |
| v. | *      No. 8:24-cv-03264-TDC |
| | * |
| UNIVERSITY OF MARYLAND | * |
| COLLEGE PARK, ET AL., | * |
| *Defendants*. | |

*      *      *      *      *      *      *      *      *      *      *      *      *

**MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS COUNTS II, IV, VI, AND VIII**

Defendants University of Maryland College Park, Doron Levy, Sandra Cerrai, and Richard Wentworth, by undersigned counsel, respectfully submit this memorandum of law in support of their motion to dismiss counts two, four, six, and eight of the complaint filed by plaintiff, Rodrigo Trevino.

**INTRODUCTION**

Plaintiff, Rodrigo Trevino, PhD ("Dr. Trevino"), is a faculty member in the Department of Mathematics at the University of Maryland, College Park. Dr. Trevino filed this employment discrimination action claiming he was denied tenure because of his race, national origin, and protected activity. (ECF No. 1.) As to the University, Dr. Trevino asserts claims of racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII") (counts one and five), Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d ("Title VI") (counts two and six), the Maryland Fair Employment Practices Act, Md. Code Ann., State Gov't § 20-606 ("MFEPA") (counts three and seven), and the Prince George's County Code § 2-222 and the Annotated Code of Maryland, State Government Article § 20-1202 (count

four).  In addition, Dr. Trevino asserts a claim against defendants Levy, Cerrai, and Wentworth for retaliation pursuant to 42 U.S.C. § 1983 ("§ 1983") (count eight).

Dr. Trevino's Title VI claims (counts two and six) should be dismissed because the complaint fails to state the necessary threshold elements for such claims.  Dr. Trevino's claim pursuant to the Prince George's County Code (count four) should be dismissed because the University has immunity from such claims.  Dr. Trevino's claim under § 1983 against the individually named defendants (count eight) should also be dismissed.  Specifically, Dr. Trevino's § 1983 claim that is premised on an alleged violation of his freedom of speech fails because Dr. Trevino's speech did not involve a matter of public concern.  Dr. Trevino's § 1983 claim alleging a due process violation fails because Dr. Trevino had no constitutionally protectable interest in an award of tenure.  Finally, Dr. Trevino's § 1983 claim against Dr. Cerrai and Dr. Wentworth also fails because the complaint does not include sufficient facts to give rise to an inference that they violated Dr. Trevino's constitutional rights.  Thus, dismissal of counts two, four, six, and eight is appropriate.

## FACTUAL ALLEGATIONS[1]

Dr. Trevino, a Mexican American man, began working for the University in 2017 as an assistant professor in the Department of Mathematics (the "Math Department").  (ECF No. 1, Compl. ¶¶ 14-15.)  In 2021, Dr. Trevino's contract came up for renewal.  (Compl. ¶ 17.)  In May 2021, the Chair of the Math Department, Dr. Doron Levy ("Dr. Levy"), recommended that Dr. Trevino's contract be renewed.  (Compl. ¶ 17.)

---

[1] For purposes of this motion only, defendants will recite the facts alleged in the complaint as if they were true. Defendants reserve the right to dispute the alleged facts in future pleadings.

During the spring semester of 2022, after Dr. Trevino received an offer for a position at another university, the University engaged in retention negotiations in an effort to retain Dr. Trevino's employment.  (Compl. ¶ 19.)  In the context of these negotiations, Dr. Trevino alleges that Dr. Levy expressed that he would recommend him for tenure.  (Compl. ¶ 19.)  In addition, Dr. Amitabh Varshney, Dean of the College of Computer, Mathematical and Natural Sciences, which houses the Math Department, told Dr. Trevino he should remain at the University because promotion to tenure was imminent and he had a bright future at the University.  (Compl. ¶ 21).  Dr. Trevino ultimately rejected the offer from the other school and remained employed by the University.  (Compl. ¶ 22.)

In May 2022, Dr. Trevino began the process for promotion to a tenured position.  (Compl. ¶ 23.)  As part of that process, Dr. Trevino and Dr. Levy selected several external evaluators to write letters for Dr. Trevino's promotion case.  (Compl. ¶ 24.)  In September 2022, during a meeting to discuss Dr. Trevino's promotion case, Dr. Levy stated that his tenure letter writers recommended tenure but expressed concern about poor student evaluations from a course Dr. Trevino taught the previous spring.  (Compl. ¶ 28.)  While Dr. Levy suggested that Dr. Trevino consider withdrawing from the tenure process and try again the following year, Dr. Trevino communicated his intent to continue with the process.  (Compl. ¶ 28.)

According to the complaint, in late September 2022, an advisory subcommittee submitted a report to the Department's Appointment, Promotion and Tenure ("APT") Committee recommending Dr. Trevino for promotion.  (Compl. ¶ 29.)  In October 2022, the entire APT Committee met to discuss Dr. Trevino's promotion.  (Compl. ¶ 31.)  Following this meeting, Dr. Levy met with Dr. Trevino to notify him that he did not have the votes necessary to obtain a promotion recommendation from the APT Committee.  (Compl. ¶ 32.)  Considering this lack of

votes, Dr. Levy encouraged Dr. Trevino to withdraw from the tenure process, and Dr. Trevino agreed.  (Compl. ¶¶ 32-33.)  Three days later, Dr. Trevino emailed Dr. Levy stating that he no longer wanted to withdraw from the promotion process.  (Compl. ¶ 34.)  Dr. Levy replied that he would not support Dr. Trevino's promotion request given the APT Committee's recommendation and the negative student course evaluations.  (Compl. ¶ 34.)  Dr. Trevino ultimately withdrew from the promotion process.  (Compl. ¶ 34.)  After withdrawing, Dr. Trevino claims he met with the Associate Provost for Faculty Affairs, John Bertot, to discuss his promotion case and mentioned, for the first time, "the hostile work environment, and [Dr. Trevino's] fear of retaliation from [Dr.] Levy."  (Compl. ¶ 36.)

In November 2022, Dr. Trevino allegedly learned that other tenure-track faculty taught fewer lower-level classes than he did, the same classes for which Dr. Trevino received the low student evaluations.  (Compl. ¶ 37.)  Believing he was subjected to differential treatment, Dr. Trevino filed a discrimination and retaliation complaint against Dr. Levy with the University's Office of Civil Rights and Sexual Misconduct ("OCRSM").  (Compl. ¶¶ 37-38.)  In response, the University initiated an investigation, which involved meeting with Dr. Trevino and considering 57 pages of documentation Dr. Trevino submitted.  (Compl. ¶¶ 41, 46-47.)  According to the complaint, although Dr. Trevino requested class assignment data to be part of the investigation, OCRSM would not consider such data.  (Compl. ¶ 49.)  The investigation found no discrimination or retaliation against Dr. Trevino.  (Compl. ¶¶ 49, 51, 52.)  Dr. Trevino appealed the decision and the appeal was denied.  (Compl. ¶¶ 51-52.)

On May 8, 2023, Dr. Trevino informed Dean Varshney of what he viewed as retaliatory behavior by Dr. Levy and "the Math Department's failure to afford him a fair promotion process." (Compl. ¶ 61.)  Upon Dean Varshney's suggestion, Dr. Trevino met with professor Joshua Singer,

chair of Dr. Levy's renewal committee. (Compl. ¶¶ 61-62.) During his meeting with Professor Singer, Dr. Trevino discussed Dr. Levy's "discriminatory actions" during his tenure case, subsequent retaliation, and Dr. Levy's "general hostility toward diversity, equity, and inclusion concerns and initiatives within the Math Department." (Compl. ¶ 62.) Dr. Trevino also met with Associate Dean of Faculty Affairs, John Fourkas, concerning his discrimination and retaliation allegations. (Compl. ¶ 63.) On June 16, 2023, Dr. Trevino filed a charge of discrimination against the University with the EEOC. (Compl. ¶ 64.)

In August 2023, during a meeting with Professor Forni, Dr. Levy allegedly "expressed his retaliatory intent to use his role as Chair to remove Dr. Trevino" from the Math Department. (Compl. ¶ 69.) Dr. Trevino allegedly requested a neutral observer during his tenure proceedings, and in response, the University replaced Dr. Levy as Chair of the Math Department during Dr. Trevino's tenure proceedings and Dr. Richard Wentworth was named substitute Chair. (Compl. ¶¶ 70-71, 73.)

On October 4 and 11, 2023, the APT Committee again met to consider Dr. Trevino's tenure case. (Compl. ¶ 75.) The Chair of the APT Committee was Dr. Sandra Cerrai. (Compl. ¶ 75.) According to the complaint, during the deliberations, Dr. Cerrai stated that Dr. Trevino had "a persecution complex," (Compl. ¶ 75) and another APT Committee member allegedly suggested they vote not on the merits of the candidate's research, service, or teaching, but based on whether the members want the candidate as a colleague. (Compl. ¶ 76.) Three members of the APT Committee allegedly questioned the sincerity of the external evaluators, all of whom provided positive reviews of Dr. Trevino. (Compl. ¶ 76.) The APT Committee did not recommend Dr. Trevino for tenure based on his research and teaching record. (Compl. ¶ 78.) Dr. Wentworth, in

his capacity as substitute Chair of the Math Department, concurred with the APT Committee's recommendation.  (Compl. ¶ 79.)

In December 2023, Dr. Trevino emailed Associate Dean Fourkas expressing concern that Dr. Wentworth was not "an unbiased substitute in his tenure case."  (Compl. ¶ 81.)  In January 2024, Dean Varshney remanded Dr. Trevino's tenure case back to the Department because he wanted to ensure that there were no due process violations.  (Compl. ¶ 83.)  On remand to the Department, Dr. Wentworth continued to serve as the substitute Chair of the Math Department with respect to Dr. Trevino's tenure case.  (Compl.  ¶ 83.)  The APT Committee met again, in February 2024, for another evaluation of Dr. Trevino's tenure case.  (Compl. ¶ 86.)  In late February 2024, the APT Committee again voted against tenure and Dr. Wentworth agreed and would not recommend Dr. Trevino for tenure because of his teaching and research.  (Compl. ¶ 87.)  Dean Varshney certified the denial of Dr. Trevino's tenure.  (Compl. ¶ 91.)  Dr. Trevino submitted a request for an appeal to University President Darryll J. Pines.  (Compl. ¶ 93.)  On June 25, 2024, President Pines granted Dr. Trevino an appeal on the grounds of substantive due process but not on procedural violations.  (Compl. ¶ 95.)  That appeal is pending.

## LEGAL STANDARD

"A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction challenges a court's authority to hear the matter brought by a complaint." *MediGrow, LLC v. Natalie M. LaPrade Med. Cannabis Comm'n*, 487 F. Supp. 3d 364, 370 (D. Md. 2020) (citation omitted). "[S]overeign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction." *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018) (citation and internal quotation marks omitted).  In

deciding a motion based on Rule 12(b)(1), a court applies "the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Richmond, Fredericksburg & Potomac R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir. 1991). Thus, "[t]he moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

To withstand a Rule 12(b)(6) motion to dismiss, the complaint must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The *Iqbal* and *Twombly* decisions "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although the well-pled facts are accepted as true, a court "need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012).

## ARGUMENT

### I.    DR. TREVINO'S TITLE VI CLAIMS SHOULD BE DISMISSED BECAUSE HE FAILS TO PLEAD THE THRESHOLD ELEMENTS OF THE CLAIMS.

Dr. Trevino's Title VI discrimination and retaliation claims, asserted in counts two and six of the complaint, should be dismissed because Dr. Trevino fails to allege the threshold facts necessary to state a Title VI claim, and thus they are duplicative of his Title VII claims. Under Title VI, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. §

2000d–7.  Although the anti-discrimination language in Title VI is broad, § 604 of Title VI only authorizes enforcement "with respect to any employment practice of any employer, employment agency, or labor organization [] where a *primary objective* of the Federal financial assistance is to provide employment."  42 U.S.C. § 2000d–3 (emphasis added).  This requirement ensures that Title VI is not transformed into an avenue for pursuing all employment discrimination claims. *Rogers v. Bd. of Educ. of Prince George's Cty.*, 859 F. Supp. 2d 742, 747 (D. Md. 2012).  This is because Title VII, rather than Title VI, "provides the primary statutory remedies for racial and ethnic discrimination in employment."  *Trageser v. Libbie Rehab. Ctr., Inc.*, 590 F.2d 87, 89 (4th Cir. 1978).

As a result, to plead a plausible Title VI claim, "a plaintiff must show either (1) that a primary objective of the federal funding defendant receives is to provide employment, or (2) that the employment discrimination complained of necessarily causes discrimination against the intended beneficiaries of the federal funding."  *Rogers*, 859 F. Supp. 2d at 750-51 (citing *Trageser*, 590 F.2d at 89).  In the Fourth Circuit, "the limitation of § 604 is more properly understood as an element of a litigant's cause of action."  *Id.*  at 748-49; *see also Venkatraman v. REI Sys.*, Inc., 417 F.3d 418, 420–21 (4th Cir. 2005) (noting that plaintiff failed to allege that "providing employment is a primary objective of the federal aid" defendant received).  Although the primary objective of "providing employment need only be *a* primary goal," and not the "exclusive goal," "courts have strictly interpreted the word 'primary.'"  *Id*. at 751.  Accordingly, "Federal funding aimed at improving education in general, for instance, does not meet the standard."  *Id*.  Similarly, "[t]he fact that federal aid distributed for non-employment purposes might require hiring individuals to carry out those goals is too attenuated as well."  *Id*.

Dr. Trevino's complaint fails to meet the threshold requirement to sufficiently plead the primary objective to sustain a Title VI claim in the employment context.  While Dr. Trevino makes the bald allegation that the University "is an institution receiving Federal financial assistance within the meaning of 42 U.S.C. § 2000d," this is insufficient to meet the requirements of § 604 and bring his claims within the ambit of Title VI.  (Compl. ¶ 109).  Indeed, Dr. Trevino's complaint fails to allege the University received federal financial assistance for the *primary purpose* of employment or that he was the intended beneficiary of any such assistance.  Without a fact-based allegation regarding the primary purpose of any federal assistance, Dr. Trevino cannot state a plausible claim under Title VI.  *See Trageser v. Libbie Rehab. Ctr. Inc.*, 590 F.2d 87, 89 (4th Cir. 1978) (stating that § 604 curtails private suits under Title VI and requires litigants to show that providing employment is a primary objective of the federal aid defendants receive, or that the employment discrimination complained of necessarily causes discrimination against the primary beneficiaries of the federal aid); *Ingram v. Morgan State Univ.*, No. 95–2314, 1996 WL 13861, at *1 (4th Cir. Jan. 16, 1996) (affirming dismissal of Title VI claim where plaintiff did not allege that defendant received federal financial assistance for the primary purpose of employment or that she was the intended beneficiary of any such assistance).  Rather, this deficiency makes clear that Dr. Trevino's Title VI claim is duplicative of, and no different than, his Title VII claim, which is the primary avenue for seeking a remedy for alleged employment discrimination.  Because Dr. Trevino's complaint fails to plead the threshold elements of a Title VI claim for employment discrimination, the Court should dismiss counts two and six of the complaint.

## II.    DR. TREVINO'S CLAIM BROUGHT UNDER THE PRINCE GEORGE'S COUNTY CODE SHOULD BE DISMISSED BECAUSE THE UNIVERSITY HAS IMMUNITY FROM SUCH CLAIM.

Dr. Trevino's discrimination and retaliation claim brought under Md. Code Ann., State Gov't § 20-1202, for a purported violation of the Prince George's County Code, should be dismissed because the University, as an agency of the State of Maryland, is immune from claims for purported violations of county codes.  Accordingly, this court lacks subject matter jurisdiction with respect to count four of the complaint.

It is "firmly embedded in the law of Maryland" that "the State of Maryland and state agencies are generally immune from suits, unless the immunity has been waived by the General Assembly." *Maryland-Nat'l Capital Park & Planning Comm'n v. Kranz*, 308 Md. 618, 622 (1987) (internal citations omitted); *see Stern v. Board of Regents, Univ. Sys. of Md.*, 380 Md. 691, 700 (2004) (The doctrine of state sovereign immunity, which protects a State from suit by a private citizen absent its consent, is "firmly embedded in the law of Maryland.")  State sovereign immunity "does not merely constitute a defense to monetary liability or even to all types of liability.  Rather, it provides an immunity from suit."  *Federal Mar. Comm'n v. South Carolina State Ports Auth.*, 535 U.S. 743, 766 (2002).

Maryland's sovereign immunity involves not only state and federal law but also extends to codes and ordinances of county and local governments.  Numerous Opinions of the Attorney General affirm the fundamental doctrine that operations of State government are not subject to control by local governments absent an express statutory provision that they shall be so controlled. *See, e.g.*, 58 Opinions of the Attorney General 512, 515–16 (1973) (holding that "the State itself will not be subject to regulation by its subdivisions unless, again, the State has provided for this regulation by specific language in the legislation."); *see also* 73 Opinions of the Attorney General

238 (1988); 62 Opinions of the Attorney General 941 (1977); 55 Opinions of the Attorney General 286 (1970).

Whether a state has waived its sovereign immunity in a specific instance "is a matter of state law." *Lee-Thomas v. Prince George's County Pub. Sch.*, 666 F.3d 244, 249 (4th Cir. 2012). The Supreme Court of Maryland has adopted a two-part test to determine whether sovereign immunity has been waived: "(1) whether the entity asserting immunity qualifies for its protection; and, if so, (2) whether the legislature has waived immunity, either directly or by necessary implication, in a manner that would render the defense of immunity unavailable." *Stern*, 380 Md. at 700-01 (quoting *ARA Health Servs. Inc. v. Department of Pub. Safety & Corr. Servs*., 344 Md. 85, 92 (1996)). The test has been distilled to the following requirement: when a governmental agency is one entitled to "avail itself of the doctrine of sovereign immunity," no suit "can be maintained thereafter against it unless the General Assembly has specifically waived the doctrine." *Stern*, 380 Md. at 701 (emphasis added).

Here, it is beyond dispute that the University qualifies for immunity against Dr. Trevino's claim brought under the Prince George's County Code. By statute, the University is an instrumentality of the State of Maryland for immunity purposes. Md. Code Ann., Educ. § 12-101(6)(i)(2) (establishing University of Maryland, College Park, as a constituent institution of the University System of Maryland); Md. Code Ann., Educ. § 12-202 (University is "an instrumentality of the State" and "an independent unit of State government"). As such, the University is entitled to claim the State's sovereign immunity to the extent it has not been waived by the Maryland General Assembly. *See Magnetti v. Univ. of Maryland*, 402 Md. 548, 557 (2007) ("It is well established that the University is considered to be an arm of the State Government for the purposes of the sovereign immunity doctrine.")

No Maryland statute, either directly or by implication, waives the State's sovereign immunity for claims under the Prince George's County Code. In fact, even on their face, the anti-discrimination in employment provisions in the Prince George's County Code do not extend to State agencies. Subtitle 2, Division 12, of the Prince George's County Code prohibits discrimination in employment by an employer, which is defined as including the Prince George's County Government, but no other governmental entities. Prince George's County Code, Subtitle 2, Division 12, §§ 2-222, 2-186(a)(5). Indeed, the term "employment agency" is defined as excluding "any agency of the Federal or State governments." Prince George's County Code, Subtitle 2, Division 12, § 2-186(a)(6). As such, it is clear that immunity has not been waived for claims arising under the Prince George's County Code.

Moreover, because the anti-discrimination provision is substantially similar to Title VII, the claim brought pursuant to the County Code is also duplicative of, and subsumed by, Dr. Trevino's Title VII claim. Subtitle 2, Division 12, § 2-185(c) of the County Code states explicitly that it is "substantially similar" to prohibitions in Federal and State law, and that it is not intended "to create a duplicative or cumulative process to those existing under similar or identical Federal or State laws." Prince George's County Code, Subtitle 2, Division 12, § 2-185(c). This provision further states that any claim adjudicated under a similar Federal or State law should not also be processed under the County Code to avoid duplicative or cumulative proceedings. *Id*. Accordingly, even if Dr. Trevino's discrimination claim under the County Code was not precluded by the University's immunity, dismissal of the County Code claim is appropriate because it is wholly duplicative of Dr. Trevino's Title VII claims.

Finally, Dr. Trevino's reliance on Md. Code Ann., State Gov't § 20-1202 to impose liability under the Prince George's County Code does not salvage his claim. (Compl. ¶ 125.) That section

provides, in relevant part, that "a person that is subjected to a discriminatory act prohibited by the county code may bring and maintain a civil action against the person that committed the alleged discriminatory act for damages, injunctive relief, or other civil relief." Md. Code Ann., State Gov't § 20-1202(b). The Supreme Court of Maryland has held that this provision does not apply to the State because, "the proper construction of the term 'person' excludes generally the State and its agencies and instrumentalities." *Washington Suburban Sanitary Comm'n v. Phillips*, 413 Md. 606, 630 (2010). Thus, this Court should dismiss Dr. Trevino's claim brought under the Prince George's County Code because the University is immune from this claim and the Court, therefore, lacks jurisdiction over this claim.

III.    **DR. TREVINO'S CLAIMS BROUGHT UNDER § 1983 AGAINST THE INDIVIDUALLY NAMED DEFENDANTS SHOULD BE DISMISSED.**

Dr. Trevino's theory of liability against the individual defendants, Dr. Levy, Dr. Cerrai, and Dr. Wentworth, which he brings under 42 U.S.C. § 1983 in count eight of the complaint, rests upon the implausible notion that they retaliated against him for exercising his First Amendment right to freedom of speech and that they interfered with his "freedom to make and enforce contracts as protected by the Due Process Clause of the Fourteenth Amendment." (Compl. ¶¶ 178, 183.) These claims fail because Dr. Trevino's EEOC and OCRSM charges do not fall within the scope of the First Amendment, as they involved matters of strictly personal, rather than public, concern. Similarly, Dr. Trevino's Fourteenth Amendment due process claim fails because, as a matter of law, he had no constitutionally protectable interest in an award of tenure or continued employment with the University. Finally, with respect to Dr. Cerrai and Dr. Wentworth, the complaint fails to allege sufficient facts to plausibly support any claim that they violated Dr. Trevino's constitutional rights. This Court should therefore dismiss Dr. Trevino's claims brought under § 1983 against the individual defendants.

A.    **Dr. Trevino's First Amendment Freedom of Speech Claim Should Be Dismissed Because His Complaints of Discrimination Did Not Involve a Matter of Public Concern.**

In count eight of the complaint, Dr. Trevino asserts that the individually named defendants retaliated against him for "exercising his right to free speech under the First Amendment." (Compl. ¶ 178.) The speech Dr. Trevino alleges he engaged in consisted entirely of his complaints of racial discrimination by Dr. Levy (Compl. ¶ 177), and as a result, do not address a matter of public concern, as required to be protected speech.

The First Amendment to the United States Constitution provides, in relevant part, that "Congress shall make no law ... abridging the freedom of speech[.]" U.S. Const. amend I. Implicit in this guarantee is "the right to be free from retaliation by a public official for the exercise of that right." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Thus, a public employee's speech is protected under the First Amendment if the speech addressed a matter of public concern. *Liverman v. City of Petersburg*, 844 F.3d 400, 407 (4th Cir. 2016). At the same time, this protection "does not require a public office to be run as a roundtable for employee complaints over internal office affairs." *Connick v. Myers,* 461 U.S. 138, 149 (1983). Indeed, the government has an interest in regulating the speech of its employees to "maintain discipline and ensure harmony as necessary to the operation and mission of its agencies." *McVey v. Stacy,* 157 F.3d 271, 277 (4th Cir.1998).

A public employee seeking to recover for First Amendment retaliation must allege that (1) he engaged in protected First Amendment activity, (2) the defendants took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendants' conduct. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005). With respect to the first element, *i.e.,* whether the

employee engaged in First Amendment protected speech, the court must consider whether the public employee was speaking as a citizen upon a matter of public concern or as an employee about a matter of personal interest. *Brooks v. Arthur*, 685 F.3d 367, 371 (4th Cir. 2012). Speech touching on a "matter of political, social, or other concern to the community" ordinarily constitutes speech on a matter of public concern. *Connick*, 461 U.S. at 147-48. By contrast, when speech involves matters only of personal interest, it is typically not protected. *Grutzmacher v. Howard Cty.*, 851 F.3d 332, 343 (4th Cir. 2017). "Personal grievances, complaints about conditions of employment, or expressions about other matters of personal interest do not constitute speech about matters of public concern that are protected by the First Amendment, but are matters more immediately concerned with the self-interest of the speaker as employee." *Stroman v. Colleton County Sch. Dist.,* 981 F.2d 152, 156 (4th Cir.1992); *see also Borough of Duryea v. Guarnieri*, 564 U.S. 379, 398 (2011) (cautioning that speech made in furtherance of an employment grievance proceeding should rarely be found to constitute public speech).

Neither Dr. Trevino's internal complaint with OCRSM nor his EEOC charge involved a matter of public concern. Rather, both complaints involved what Dr. Trevino viewed as Dr. Levy's disparate treatment of him. (Compl. ¶¶ 38-39.) Dr. Trevino's claims asserted with OCRSM concerned only his conditions of employment, namely the number of lower-level classes he was required to teach, and were therefore "purely personal grievance[s]" that cannot support a claim for First Amendment retaliation. (Compl. ¶ 38.) Dr. Trevino's EEOC charge likewise constituted speech on matters of personal interest only.[2] Ex. 1, Amended EEOC Charge; *see Guarnieri*, 564

_____

[2] While the court does not typically consider extrinsic evidence at the motion to dismiss stage, "[i]n employment discrimination cases, courts often take judicial notice of EEOC charges and EEOC decisions." *Golden v. Mgmt. & Training Corp.*, 319 F. Supp. 3d 358, 366 n.2 (D.D.C. 2018); *see also Rodgers v. COSMO*, Inc., No. CV ELH-19-3268, 2020 WL 1663134, at *6 (D. Md.

U.S. at 398 ("A petition filed with an employer using an internal grievance procedure in many cases will not seek to communicate to the public or to advance a political or social point of view beyond the employment context."); *Taylor v. Cty. of Pulaski*, 7:06CV00467, 2008 WL 4533977 (W.D. Va. Oct. 8, 2008) (finding that plaintiff's EEOC charge did not constitute matters of public concern, since it "overwhelmingly focus[ed] upon the conduct directed against [the plaintiff] and the harm that allegedly resulted to him"); *Brown v. Bratton*, No. CV ELH-19-1450, 2020 WL 886142, at *23–25 (D. Md. Feb. 21, 2020) (finding that plaintiff's EEOC charge and internal complaints did not address any matter of public concern but rather "purely personal grievances" concerning alleged race discrimination.)  There is no allegation in either the OCRSM complaint or the EEOC charge that Dr. Levy or anyone else discriminated against other Mexican American faculty members.  Rather, both focus exclusively on alleged wrongs that Dr. Trevino alone endured.  Personal grievances of this nature are not matters of public concern that are afforded First Amendment protection in the public employment context.  Because Dr. Trevino's OCRSM and EEOC complaints did not involve matters of public concern, he has failed to state a plausible claim for First Amendment retaliation under § 1983.

> **B.    Dr. Trevino's Due Process Claim Should be Dismissed Because He Did Not Have a Property Interest in an Award of Tenure or Continued Employment at the University.**

Dr. Trevino also alleges that the individual defendants interfered with his "freedom to make and enforce contracts as protected by the Due Process Clause of the Fourteenth Amendment." (Compl. ¶ 183.)  Dr. Trevino's Fourteenth Amendment due process claim fails, however, because

---

Apr. 3, 2020) (permitting consideration of an EEOC charge and questionnaire in resolving a Rule 12(b)(6) motion where the charge is referenced in the complaint and is integral to the suit).

he cannot demonstrate that he had a property interest in an award of tenure or continued employment beyond the expiration of his employment contract.

To plead a valid due process claim, a plaintiff must show: (1) that he had a property or liberty interest; (2) of which the defendant deprived him; (3) without due process of law.[3]  *Tri Cnty. Paving, Inc. v. Ashe Cnty.*, 281 F.3d 430, 436 (4th Cir. 2002).  As to the first element, it is well-settled that the Fourteenth Amendment itself does not create property interests.  *Id.*  "Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."  *Bd. of Regents v. Roth,* 408 U.S. 564, 577 (1972).  To have a property interest in a benefit, a person must have a "legitimate claim of entitlement to it."  *Id.*  A mere "abstract need or desire for it" or "a unilateral expectation of it" is insufficient.  *Id.*  While tenure itself is a protected property interest, "[t]enure review procedures, without more, do not give rise to a protected property interest." *Davis v. Rao*, 583 Fed.Appx. 113, 114 (4th Cir. 2014).

Dr. Trevino, who remains employed by the University, claims that he "possessed a protected property interest" in his "employment contract and the granting of tenure."  (Compl. ¶ 185.)  However, as an untenured professor, Dr. Trevino has no constitutionally protected interest in an award of tenure or continued employment beyond the expiration of his employment contract. *See Amr v. Va. State Univ.,* 3:07–CV–628, 2009 WL 112829, at *8 n. 15 (E.D. Va. Jan. 14, 2009), *aff'd,* 331 Fed.Appx. 194 (4th Cir. 2009) ("[A]n untenured professor such as Dr. Amr has no constitutionally protected property interest in continued employment."); *Davis v. Rao*, 982 F.Supp. 2d 683, 691 (E.D. Va. 2013) (finding that the plaintiff had no protectable property interest in her status as an untenured professor); *Marriott v. Cole*, 115 Md. App. 493, 509 (1997) (untenured

---

[3] Dr. Trevino makes no allegation that he was deprived of a liberty interest.  Rather, Dr. Trevino's due process claim rests upon the presumption that he had a protected property interest. (Compl. ¶ 185.)

professor had no protected property interest in the expectation of continued employment beyond the expiration of his employment contact).   Because Dr. Trevino has failed to allege a constitutionally protected property interest that was purportedly violated by Dr. Levy, Dr. Cerrai, and Dr. Wentworth, his due process claim asserted in count eight should be dismissed.

### C.    Dr. Trevino's Claims Against Defendants Cerrai and Wentworth Should Be Dismissed Because He Fails to Plead Sufficient Facts to Show Any Purported Misconduct by Them.

In addition to the deficiencies discussed above which apply to all three of the individually named defendants, Dr. Trevino's claims against Drs. Cerrai and Wentworth also fail because the complaint does not allege sufficient facts to give rise to an inference that they violated Dr. Trevino's constitutional rights.   Indeed, the scant references in the complaint to Dr. Cerrai and Dr. Wentworth fall far short of pleading a plausible factual predicate necessary to state a § 1983 claim.

As noted, to plead a claim of First Amendment retaliation, a plaintiff must not only plead that he engaged in First Amendment-protected activity but also that the defendants took some action that adversely affected those rights and the existence of a causal relationship between the protected activity and the defendants' conduct.   *Constantine*, 411 F.3d at 499.   To plead a Fourteenth Amendment due process claim, a plaintiff must not only plead the existence of a constitutionally protected property interest but also that the defendants deprived plaintiff of such interest without due process of law.   *Tri Cnty. Paving, Inc.*, 281 F.3d at 436.

There is little mention of Dr. Cerrai or Dr. Wentworth in the complaint, much less factual allegations that either of them took actions to deprive Dr. Trevino of his constitutional rights.   With respect to Dr. Cerrai, the complaint references just two alleged incidents.   First, Dr. Trevino alleges that during the APT Committee's October 2023 deliberations concerning tenure, Dr. Cerrai said that Dr. Trevino had a "persecution complex."   (Compl. ¶ 75.)   Second, Dr. Trevino alleges that

Dr. Cerrai acted in an "openly biased way" during an APT Committee meeting in February 2024 when she interrupted faculty members who spoke in favor of Dr. Trevino.  (Compl. ¶ 86.)  These vague and limited allegations are insufficient to give rise to an inference that Dr. Cerrai adversely affected Dr. Trevino's protected speech, *Constantine*, 411 F.3d at 499, or deprived him of any protected property interest.  *Tri Cnty. Paving, Inc.*, 281 F.3d at 436.

The allegations concerning Dr. Wentworth are similarly sparce.  Dr. Trevino alleges that Dr. Wentworth was appointed substitute chair of the Math Department and was a "close associate" of Dr. Levy (Compl. ¶ 73), that Dr. Wentworth concurred with the findings of the APT Committee in October 2023 and February 2024 (Compl. ¶¶ 78-79, 87), and that Dr. Wentworth interrupted APT Committee members during a February 2024 meeting (Compl. ¶ 86).  There are no other factual allegations concerning what Dr. Cerrai or Dr. Wentworth did to purportedly violate Dr. Trevino's constitutional rights.

These allegations do not plausibly support a conclusion that Dr. Cerrai or Dr. Wentworth violated Dr. Trevino's constitutional rights or that any denial of tenure was caused by their actions. Indeed, the complaint confirms that the APT Committee voted against Dr. Trevino's tenure on three separate occasions, including once before the alleged acts of Dr. Wentworth and Dr. Cerrai. (Compl. ¶¶ 32, 78, 87.)  Regardless of any comments or acts of Dr. Wentworth or Dr. Cerrai, the consistently negative votes by the APT Committee highlight the concerns the Math Department's faculty had concerning Dr. Trevino's teaching and research. It stretches credulity to suggest that the conclusions of the APT Committee concerning Dr. Trevino's credentials were unduly influenced by Dr. Cerrai or Dr. Wentworth because the determinations by the APT Committee necessarily involved subjective scholarly judgments that a court should be reluctant to second guess. *See, e.g., Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 376 (4th Cir. 1995) ("professorial

19

appointments necessarily involve 'subjective and scholarly judgments,' with which we have been reluctant to interfere." (internal citations omitted)).

While Dr. Trevino was disappointed with the APT Committee's repeated recommendations against tenure, the meager facts he alleges concerning Dr. Cerrai and Dr. Wentworth simply do not create a reasonable inference that they violated his constitutional rights and were the "but-for" cause of his tenure denial.[4] Dr. Trevino has therefore failed to sufficiently plead any § 1983 claims as to Dr. Cerrai and Dr. Wentworth, and this Court should dismiss all claims against them.

## CONCLUSION

This Court should grant defendants' motion to dismiss counts two, four, six, and eight of the complaint.

Respectfully submitted,

ANTHONY G. BROWN
Attorney General of Maryland

*s/ Michael E. Rowan*
MICHAEL E. ROWAN
Federal Bar No. 27660
Assistant Attorney General
Office of the Attorney General
200 St. Paul Place, 17th Floor
Baltimore, Maryland 21202
mrowan@oag.state.md.us
(410) 576-6476
(410) 576-6437 (facsimile)

January 21, 2025

*Attorneys for Defendants*

---

[4] "Constitutional torts, like their common law brethren, require a demonstration of both but-for and proximate causation." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012).