UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

RODRIGO TREVINO,

    Plaintiff,

v.

UNIQUE STATES DISTRICT COURT

UNIVERSITY OF MARYLAND
COLLEGE PARK,
DORON LEVY,
SANDRA CERRAI and
RICHARD WENTWORTH,

    Defendants.

Civil Action No. 24-3264-TDC

**MEMORANDUM OPINION**

Plaintiff Rodrigo Trevino has filed this civil action against Defendants the University of Maryland, College Park and Professors Doron Levy, Sandra Cerrai, and Richard Wentworth, in which he asserts claims of race and national origin discrimination and retaliation, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e–17; Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d; and the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann., State Gov't § 20–606 (West 2021), as well as claims under 42 U.S.C. § 1983 ("§ 1983") for violations of the First and Fourteenth Amendments to the United States Constitution. Defendants have filed a Motion to Dismiss the § 1983 claims, asserted in Count 7 of the Amended Complaint, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The Motion is fully briefed. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED IN PART and DENIED IN PART.

## BACKGROUND

The presently operative Amended Complaint sets forth the following relevant facts, which this Court accepts as true for purposes of the Motion.

In 2017, Plaintiff Dr. Rodrigo Trevino, a Mexican American man, was hired as an Assistant Professor in the Department of Mathematics at the University of Maryland in College Park, Maryland ("UMD"). Trevino has a Ph.D. in Mathematics from the University of Maryland and a bachelor's degree in Mathematics from the University of Texas. While at UMD, he published articles in multiple leading journals, secured six research grants and one teaching grant, developed two courses, and served on multiple committees. Trevino took on duties beyond his job description, such as by serving as faculty advisor for a math summer camp for high school girls. In the spring of 2020, Trevino raised concerns about equity in hiring to the Chair of the Mathematics Department, Defendant Professor Doron Levy, and to the Chair of the Mathematics Department's Appointment, Promotion, and Tenure ("APT") Committee, Defendant Professor Sandra Cerrai. He also spoke to Cerrai to express concerns about the treatment of a female junior professor. In November 2021, while Defendant Professor Richard Wentworth was Chair of the APT Committee, he raised concerns about equity in hiring to the Dean's Office.

On May 6, 2021, Levy recommended to Dean Amitabh Varshney that Trevino's contract be renewed. Am. Compl. ¶ 17, ECF No. 24. On March 10, 2022, Trevino was offered an Associate Professor position at another university. In response, Levy told Trevino that he would recommend Trevino for tenure at UMD and provided him with a retention offer that included a salary increase and research funds. In April 2022, at a meeting with Levy and Trevino to discuss the retention offer, Varshney told Trevino that he should stay at UMD because "promotion to tenure was imminent." Id. ¶ 21. As a result, Trevino rejected the other offer and decided to remain at UMD.

I.     **First Tenure Process**

In May 2022, the tenure process began. Levy approved an advisory subcommittee to the APT Committee to gather materials and make recommendations about Trevino and selected external evaluators to submit letters on Trevino's behalf. In August 2022, Trevino was assigned to a course coordinator position that had previously been assigned only to tenured faculty or professional-track faculty.

That same month, after another professor nominated Trevino to serve as an equal employment opportunity ("EEO") officer for the Mathematics Department, Levy opposed the nomination and sought to convince others not to vote for Trevino for that role. Trevino was not selected.

On September 9, 2022, Levy recommended that Trevino withdraw from the tenure process and try again in 2023 based on concerns about Trevino's recent student evaluations. Trevino resisted the suggestion and expressed his intent to remain in the tenure process. Later that month, Trevino's advisory subcommittee submitted a report to the APT Committee in which it recommended that Trevino be promoted to Associate Professor with tenure because Trevino had "easily fulfilled the criteria" for such a promotion. *Id.* ¶ 29.

Nevertheless, on October 26, 2022, Levy again advised Trevino to withdraw from the tenure process on the grounds that Trevino did not have enough faculty votes to secure the recommendation of the APT Committee. Levy told Trevino that continuing with the tenure process would not be viewed favorably at higher levels of review, and that any ultimate denial of tenure would result in Trevino's termination from UMD. In response, on October 27, 2022, Trevino agreed to withdraw from the tenure process.

In the following days, Trevino reviewed UMD's promotion policies and discovered that to move from the department level to the university level of the process, he only had to receive a recommendation from either his Department Chair or from his Department's APT Committee. Accordingly, on October 30, 2022, Trevino emailed Levy to state that he no longer wished to withdraw from the tenure process and asked for Levy's recommendation so that he could proceed. Levy, however, declined to provide his recommendation and cited the APT Committee's decision and the low student evaluations in a single course. Trevino withdrew from the tenure process.

On November 7, 2022, Trevino met with Associate Provost for Faculty Affairs John Bertot, who oversaw promotions at UMD, to raise concerns that Levy's failure to recommend Trevino was based on improper considerations. Bertot agreed to investigate further.

## II. Initial Complaint

In November 2022, Trevino discovered what he considered to be differential treatment with respect to his teaching assignments in the Mathematics Department. Specifically, he learned that he had been required to teach more lower-level, required classes than ten other tenure-track faculty. These classes were typically less popular among students, and it was in these classes that Trevino had received his low student evaluations. Indeed, while Trevino was required to teach this type of class four times, the six assistant professors promoted to tenure during Trevino's time at UMD taught only one such lower-level class or none at all.

Upon this realization, Trevino filed a discrimination and retaliation complaint against Levy with the UMD Office of Civil Rights and Sexual Misconduct ("OCRSM"). On November 21, 2022, Trevino told Bertot that he had filed a complaint against Levy. During the subsequent investigation, Trevino provided OCRSM with supporting documentation regarding course assignments and student evaluations of comparator junior faculty, but he was told that OCRSM

was not considering such issues. Instead, OCRSM focused on Levy's statement that Trevino was denied tenure because he did not publish often or in "particularly good journals." *Id.* ¶ 49. On February 6, 2023, OCSRM issued a report adverse to Trevino. Although Trevino appealed the decision, the Dean of the Graduate School affirmed the OCSRM's determination.

### III. Sexual Harassment Issues

Meanwhile, on December 13, 2022, Trevino met with a faculty member who raised concerns that an upcoming May 2023 conference was set to feature someone who had previously sexually harassed her. After Trevino recommended that the faculty member discuss the matter with Levy, she reported that he dismissed her concerns. The next day, on December 14, 2022, Trevino emailed Levy to request that he address the issue and suggested certain measures to create a harassment-free environment. Levy responded by stating that he was unaware of the harassment claim.

### IV. Retaliatory Statements

During the Spring 2023 semester, Levy began disparaging Trevino to other faculty members. On February 4, 2023, Professor Giovanni Forni informed Trevino that Levy was making threats against Trevino. On February 8, 2023, Forni reported to OCRSM that Levy had "threatened to sue Trevino for damages to his career and future compensation"; "checked with the University administration that suing Trevino for lying or damages would not be considered retaliatory"; stated that "Trevino might become unemployable in academia as a consequence of being sued"; and expressed that "he had a good case that he was targeted by Trevino's lies because [Levy] is Jewish." *Id.* ¶ 50. Levy also said that "Trevino should get a psychological evaluation" and that "Trevino's tenure case failed as a consequence of Trevino's 'sloppiness.'" *Id.* OCRSM did not respond to Forni's report.

After Levy made additional disparaging statements about Trevino, on May 8, 2023, Trevino reported Levy's retaliatory behavior and failure to afford Trevino a fair promotion process to Varshney. Varshney informed Trevino that Levy had nominated Trevino to be honored at the Maryland Research Excellence Celebration that had occurred on March 28, 2023. Nevertheless, Varshney encouraged Trevino to report Levy's retaliatory behavior to Associate Dean of Faculty Affairs John Fourkas and to Professor Joshua Singer, who was the Chair of Levy's Renewal Committee.

On May 12, 2023, Trevino met with Singer to discuss what he considered to be Levy's discriminatory and retaliatory actions. Trevino also raised concerns about Levy's general hostility toward diversity, equity, and inclusion initiatives within the Mathematics Department. On May 31, 2023, Trevino made a similar report to Fourkas. In that meeting, Fourkas informed Trevino that if he were to proceed with a second tenure process, he would have to provide a new set of tenure letters from different writers, which meant that Trevino would end up needing to secure double the number of positive letters required of other candidates.

On June 16, 2023, Dr. Trevino filed an official charge of discrimination against UMD with the United States Equal Employment Opportunity Commission ("EEOC").

V.    **Second Tenure Process**

Following this filing, Trevino's second tenure process began. On July 18, 2023, Trevino met with Fourkas to request that Levy be disqualified from Trevino's tenure process, but Fourkas responded that although he would request that Levy recuse himself, UMD would not remove Levy involuntarily. On or about August 29, 2023, Levy told Forni that Trevino should not be tenured "even if his research, teaching and mentoring records are entirely satisfactory, and would otherwise secure his tenure promotion," because Trevino had brought "controversy" to the Mathematics

6

Department, had filed a "frivolous" complaint that "ruined [Levy's] service record," and had made "unsubstantiated accusations of spreading lies about him." *Id.* ¶ 69. Forni reported this conversation to the UMD administration in an email in which he stated that Levy's conduct "clearly 'discourages someone from resisting or complaining about future discrimination'" and was creating a "difficult, hostile work environment for myself and others." *Id.*

Also on August 29, 2023, Forni approached Cerrai, the Chair of the APT Committee, to ask that she ensure that Trevino's case be decided on the merits. Cerrai responded that it was too late, and that the Committee would deny him tenure.

On September 11, 2023, Fourkas informed Trevino of Forni's August 29, 2023 report and stated that Levy would not serve as Department Chair during Trevino's tenure proceedings. On September 20, 2023, Varshney appointed Wentworth, a close associate and direct report of Levy, as the substitute Chair for Trevino's tenure case.

The APT Committee convened on October 4 and 11, 2023 to discuss Trevino's tenure case. The Committee found that Trevino's research and service were at or above the threshold for tenure, and that all external evaluators recommended that Trevino be promoted. Trevino's student evaluations for the past year were also very positive. During these meetings, however, Cerrai asserted that Trevino had a "persecution complex" and misrepresented a table he had submitted in his application as disparaging other colleagues' teaching records. *Id.* ¶ 77. In contravention of UMD policy, Cerrai and Wentworth allowed another professor to suggest that the Committee should vote on Trevino's tenure based on whether the members wanted Trevino as a colleague, not based on the merits of Trevino's research, service, and teaching. Cerrai also allowed members, contrary to the role of the Committee, to question the sincerity of Trevino's external letter writers.

On October 19, 2023, Wentworth informed Trevino that the APT Committee did not recommend him for tenure and that Wentworth himself would not otherwise recommend Trevino for tenure based on his research and teaching record. Several members of the APT Committee drafted a "minority report" that objected to the Committee's conclusions. *Id.* ¶ 82. Nevertheless, Wentworth and Cerrai submitted their negative recommendation, which omitted positive information about Trevino.

On January 23, 2024, Varshney remanded Trevino's tenure case back to the Mathematics Department because he was concerned that there may have been violations of due process and was unwilling to certify the decision.

### VI. Complaint on Hiring Practices

The next day, on January 24, 2024, Levy convened a faculty meeting in the Mathematics Department in which he announced that he would do "anything he could" to oppose UMD's attempt to address inequitable hiring practices within the Department. *Id.* ¶ 88. Trevino spoke up and noted that the hiring guidelines had been in place for years. On January 29, 2024, Trevino sent an email reporting Levy's statements to UMD Vice President for Diversity and Inclusion Georgina Dodge, Bertot, and Fourkas. Trevino also referenced the many equity concerns he had raised throughout the years that had been dismissed or ignored.

### VII. Tenure Denial

In February 2024, the APT Committee met again to reevaluate Trevino's tenure case. Wentworth and Cerrai interrupted Committee members who attempted to speak in Trevino's favor. Although eight external letter writers had assessed Trevino's research work and unanimously deemed it worthy of tenure, Cerrai continued to cast doubt on the sincerity of the letter writers. After the meeting, Wentworth sent a letter to the Dean declining to recommend Trevino for tenure.

The letter provided no criticism of Trevino's record and instead questioned the sincerity of the letter writers.

On March 5, 2024, Bertot reprimanded Trevino for communicating with Fourkas and for filing complaints with OCRSM and the EEOC. The next day, on March 6, 2024, a mathematics professor reported to Bertot that before the APT Committee met to consider Trevino's tenure in October 2023, Cerrai had said that the Committee was planning to vote against Trevino because of his civil rights complaint and asked the professor to join in that effort and spread the word. Bertot responded that he would forward the professor's report to the Provost.

On March 11, 2024, Trevino filed an Amended Complaint with the EEOC. On March 15, 2024, Varshney, based on his conclusion that he had not identified any due process violations, officially certified the denial of tenure to Trevino. On April 15, 2024, Trevino submitted a request for an appeal of his tenure decision to the UMD president. On June 25, 2024, he was permitted to appeal on the grounds of potential substantive due process violations, but not procedural due process violations.

**VIII. The Civil Action**

On November 11, 2024, Trevino filed the original Complaint in this case. In the presently operative Amended Complaint, Trevino asserts the following claims against UMD in the following numbered counts: (1) race and national origin discrimination in violation of Title VII; (2) race and national origin discrimination in violation of Title VI; (3) race and national origin discrimination in violation of the MFEPA; (4) retaliation in violation of Title VII; (5) retaliation in violation of Title VI; and (6) retaliation in violation of the MFEPA. In Count 7, Trevino alleges claims against Levy, Cerrai, and Wentworth under § 1983 for retaliation, in violation of his rights

9

under the First Amendment to the Constitution, and for a deprivation of a property interest without due process, in violation of the Fourteenth Amendment.

## DISCUSSION

In their Motion to Dismiss, Defendants seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) of Count 7 only, on the grounds that Trevino has failed to state plausible claims under § 1983 that (1) Defendants violated his right to freedom of speech under the First Amendment by retaliating against him for submitting complaints of discrimination; and (2) Defendants violated his right to due process of law under the Fourteenth Amendment by interfering with a protected property interest in Trevino's employment contract and the granting of tenure.

### I.     Legal Standards

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Generally, in evaluating a Rule 12(b)(6) motion, a court considers only the complaint and any attachments to it. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). Courts are permitted, however, to consider documents attached to a motion to dismiss "when the document is integral to and explicitly relied on in the complaint, and when the plaintiffs do not challenge the document's authenticity." *Zak v. Chelsea Therapeutics Int'l, Ltd.*,

780 F.3d 597, 606–07 (4th Cir. 2015) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)) (citation modified). Here, Defendants have attached to their Motion Trevino's Amended EEOC charge of discrimination filed on March 11, 2024. Where the Amended Complaint specifically references this document, and there is no dispute as to its authenticity, the Court finds that it is integral to the complaint and thus may consider it in resolving the Motion.

Section 1983 provides that a person who "under color of" law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. To prevail on a § 1983 claim, a plaintiff must demonstrate that: (1) the defendant violated a right secured by the United States Constitution or federal law; and (2) the act or omission causing the violation of a right was committed by a person acting "under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Defendants do not dispute that Levy, Cerrai, and Wentworth (collectively, "the Individual Defendants"), as employees of a state university, are subject to § 1983 as state actors.

## II.  First Amendment

As to his First Amendment claim, Trevino alleges that the Individual Defendants retaliated against him for engaging in protected activity consisting of complaining about discrimination and retaliation and opposing unlawful employment practices, in violation of his First Amendment right to freedom of speech. Defendants argue that this claim should be dismissed because Trevino's speech did not involve a matter of public concern.

For a First Amendment retaliation claim asserted by a public employee, a public employer violates the public employee's First Amendment rights when it discharges, refuses to hire, or

11

makes a promotion decision "based on the exercise of that employee's free speech rights." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 316 (4th Cir. 2006). To prove such a retaliation claim, a plaintiff must establish that (1) the public employee spoke as a citizen, not as an employee, "on a matter of public concern" rather than a matter of personal interest; (2) the employee's interest in speaking on that matter outweighed the government's "interest in providing effective and efficient services to the public"; and (3) there was a "sufficient causal nexus between the protected speech and the retaliatory employment action." *Id.*; *see also McVey v. Stacy*, 157 F.3d 271, 277–78 (4th Cir. 1998).

As to the first element, speech relates to "a matter of public concern when it involves an issue of social, political, or other interest to a community." *Campbell v. Galloway*, 483 F.3d 258, 267 (4th Cir. 2007). Generally, "[p]ersonal grievances, complaints about conditions of employment, or expressions about other matters of personal interest" are not speech relating to "matters of public concern." *Id.* A court's inquiry into whether speech is a matter of public concern is fact-specific and requires consideration of "the content, form, and context of a given statement, as revealed by the whole record." *Id.* (quoting *Connick v. Myers*, 461 U.S. 138, 147–48 (1983)).

Generally, speech relating to race discrimination may qualify as speech on a matter of public concern. *See Love-Lane v. Martin*, 355 F.3d 766, 777 (4th Cir. 2004) (holding that a teacher's speech about racially discriminatory teaching and discipline practices at her school related to a matter of public concern). The United States Court of Appeals for the Fourth Circuit, however, has distinguished between complaints about broad discrimination in a public workplace and individual, internal complaints about discriminatory treatment. *Brooks v. Arthur*, 685 F.3d 367, 372–73 (4th Cir. 2012). In *Brooks*, the court, while acknowledging that "discriminatory

12

institutional policies or practices can undoubtedly be a matter of public concern," concluded that an African American employee of a state prison system whose internal complaint of discrimination related only to his individual mistreatment did not have a valid First Amendment retaliation claim because an employee "who seeks primarily resolution of his personal situation through an employer-provided grievance process simply does not speak with the civic intent necessary to invoke the First Amendment." *Id.* at 369–70, 373. In contrast, the court noted that certain discrimination complaints can qualify as relating to a matter of public concern, such as those that raise issues about a "practice within [a] department" or conduct that "imperils the public welfare." *Id.* at 372, 374–75.

For example, in *Cromer v. Brown*, 88 F.3d 1315 (4th Cir. 1996), cited by *Brooks*, the Fourth Circuit found that a plaintiff who adopted as his own speech a letter from an association of Black law enforcement officers asserting race discrimination had spoken on a matter of public concern where the letter complained of, among other practices, "ineffective minority recruitment efforts," a "lack of opportunity" for Black officers in certain units, and a lack of promotional opportunities for Black officers. *Cromer*, 88 F.3d at 1325–26; *see also Brooks*, 685 F.3d at 374 (discussing *Cromer*). Similarly, in *Campbell*, a police officer's internal complaint of sexual harassment was deemed to relate to a matter of public concern in part because the plaintiff had stated that the harassment extended to other female officers and members of the public, as well as because it raised the public safety concern that male officers would not provide backup to her on "dangerous calls." *Campbell*, 483 F.3d at 269–70.

In discussing this claim in the Amended Complaint, Trevino asserts that he engaged in protected activity "on multiple occasions" from 2020 to 2024 "by complaining about discrimination and retaliation and/or opposing Defendant University's unlawful employment

13

practices, as well as through the lodging of a complaint of racial discrimination against Defendant University and Levy." Am. Compl. ¶¶ 165, 171. Although Trevino's protected activity focuses significantly on his individual claim of discrimination, which does not constitute a matter of public concern, he has identified multiple instances in which he spoke up, either in a Department meeting or to Department leaders such as Levy and Cerrai, in which he raised broader concerns about discrimination in the Mathematics Department.

For example, he has stated that he expressed concern "about equity in the Department's hiring practices," including in relation to a female junior professor, in a 2020 email to Levy and Cerrai and in a November 2021 communication with the Dean's Office while Wentworth was Chair of the APT Committee, all before he personally entered the tenure process. Id. ¶ 16. Indeed, by August 2022, he was viewed by another professor who nominated him to be an EEO officer for the Mathematics Department as "someone who is more proactive about equal opportunity." Id. ¶ 27. In December 2022, during the tenure process, Trevino emailed Levy and an advisory board relating to a mathematics research center to advocate on behalf of a female colleague who had experienced harassment but also to suggest measures to ensure a harassment-free environment. After reporting to Professor Singer on Levy's general hostility to diversity, equity, and inclusion initiatives in May 2023, Levy spoke up at a January 2024 faculty meeting during which he responded to Levy's statement that he would do "anything he could to oppose" UMD's diversity and equity efforts in the Mathematic Department by noting that the guidelines at issue had been in place for years. Id. ¶¶ 88–89. He then reported Levy's intent to oppose equity in hiring in an email to Associate Provost Bertot, Associate Dean Fourkas, and a UMD Vice President. In that communication, Trevino reasserted "the many equity concerns" he had raised in prior years. Id. ¶

14

89. These statements occurred before the APT Committee and Wentworth made final decisions on Trevino's tenure in February 2024.

Notably, the EEOC charge of discrimination corroborates these allegations in that it specifically asserts that Trevino "was also retaliated against for opposing discrimination hiring practices against minorities and promoting diversity, equity, and inclusion at the University," it contains some of the same examples of Trevino's advocacy on issues of equity, and it describes additional examples such as a 2022 incident in which Trevino raised concerns about a candidate for a chaired professorship "who had made publicly discriminatory remarks" and requested a meeting with Levy and Wentworth about the issue, only to have them ignore his concerns. Am. EEOC Charge at 1–2, Mot. Ex. 1, ECF No. 30-2. As alleged in the Amended Complaint, these statements were made not only in an EEOC charge of discrimination, but also in discussions within the Mathematics Department and with its leadership. *See Cromer*, 88 F.3d at 1326 (finding that a letter submitted to the sheriff complaining of systemic discrimination was speech on a matter of public concern even thought it was not distributed publicly).

Viewing the allegations in the light most favorable to the plaintiff, as is required at this stage, the Court finds that Trevino has sufficiently alleged that he was subjected to retaliation based on his advocacy and complaints relating to broader issues of discriminatory and inequitable hiring in the Mathematics Department. In turn, where Defendants offer no argument in relation to other elements of a First Amendment claim, and while the merits of this claim will be tested later in the case, at this early stage Trevino has plausibly alleged retaliation based on speech on a "matter of public concern." *See id.* at 1325–26.

Finally, contrary to Defendants' argument, the Court finds that Trevino has stated a viable First Amendment retaliation claim against Wentworth. Trevino has alleged that Wentworth, a

close associate of Levy and the substitute Chair of the Mathematics Department for purposes of his tenure process, failed to ensure that the February 2024 APT Committee meeting was "fair" and "unbiased," including by joining Cerrai in interrupting Committee members attempting to advocate on behalf of Trevino and impermissibly allowing consideration of whether Committee members "want the candidate as a colleague." Am. Compl. ¶¶ 78, 90–91. Wentworth also specifically submitted a letter, as the substitute Chair, in which he declined to recommend to the Dean that Trevino receive tenure without providing an explanation based on any issues with Trevino's research or publications and instead focused on questioning the sincerity of certain letter writers who supported Trevino. Under the applicable procedures, Wentworth's letter prevented any consideration of Trevino's tenure application at the university level. Viewing the allegations in the light most favorable to Trevino, including those that provide facts supporting the conclusion that Trevino was deserving of tenure, the Court finds that he has sufficiently alleged a First Amendment retaliation claim against Wentworth.

The Motion will therefore be denied as to the First Amendment retaliation claim against all of the Individual Defendants.

### III.  Fourteenth Amendment

Trevino also asserts a § 1983 claim on the grounds that the Individual Defendants violated his procedural due process rights under the Fourteenth Amendment "by unduly influencing and interfering in the tenure process" to such an extent that it interfered with his protected property interest in his employment contract and the granting of tenure. *Id.* ¶¶ 175–76. To state a valid claim of a procedural due process violation under the Fourteenth Amendment, a plaintiff must show (1) that he had a property or liberty interest; (2) of which defendant deprived him; (3) without due process of law. *See Tri-Cnty. Paving, Inc. v. Ashe Cnty.*, 281 F.3d 430, 436 (4th Cir. 2002).

Property interests are not defined by the Constitution but rather "are created and their dimensions are defined by existing rules or understandings that stem from an independent source." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). To have a property interest, a person must have "more than an abstract need or desire" for that interest or a "unilateral expectation of it." *Id.* Instead, the plaintiff must "have a legitimate claim of entitlement to it." *Id.*

Trevino's Fourteenth Amendment claim fails because Trevino did not have a constitutionally protected property interest. While tenure at a university may qualify as a property interest, *see id.* at 576, an individual seeking tenure ordinarily does not "have a legitimate claim of entitlement to it" and thus does not have such a property interest absent some specific basis for such an entitlement. *See id.*; *Clark v. Whiting*, 607 F.2d 634, 641 (4th Cir. 1979) (holding that a faculty member has no 'property entitlement to a promotion and therefore lacks any constitutional basis for requiring some kind of hearing upon a nonpromotion decision' on that ground" (quoting *Colm v. Vance* 567 F.2d 1125, 1130 (D.C. Cir. 1977))). In *Clark*, the court upheld the dismissal of a due process claim filed by a professor who had been denied tenure and found that to the extent that procedural due process imposed any requirement in a tenure process, it would be limited to "the right to know the ground for denial of promotion and an opportunity to present his reasons for feeling he was entitled to promotion." *Clark*, 607 F.2d at 645.

Here, Trevino has not identified any statute, regulation, ordinance, or other source that establishes an entitlement to tenure. To the extent that Trevino relies on a provision of his employment contract that incorporates the UMD Policy on Appointment, Rank, and Tenure of Faculty, which sets forth the particular procedures for the tenure process, the Fourth Circuit has found that "[t]enure review procedures, without more, do not give rise to a protected property interest." *Davis v. Rao*, 583 F. App'x 113, 114 (4th Cir. 2014). In *Davis*, the court rejected the

17

claim of a professor at a state university that the denial of her application for tenure violated her due process rights because the university's "Promotion and Tenure Review Guidelines" entitled her to a "fair review process." *Id.* Rather, the Fourth Circuit has noted that such a claim "is a circular one" and concluded that it is "conceptually unacceptable" to allow state contractual provisions that establish due process procedures to "create the very property interest protected by those guarantees." *See Siu v. Johnson*, 748 F.2d 238, 243 n.11 (4th Cir. 1984).

Beyond the tenure review procedures, the only additional basis for a property interest cited by Trevino is Levy's alleged oral statement that he would recommend Trevino for tenure. Trevino has provided no authority, and the Court has not found any, in support of the claim that such a statement, which did not on its face provide any kind of commitment that Trevino would receive tenure, could create a "legitimate claim of entitlement" to tenure. *Roth*, 408 U.S. at 577. Where Trevino's claim of a property interest is based on no more than the tenure review procedures, the Court finds that he has failed plausibly to allege that he had a property interest in tenure or a tenure process that could support a due process claim. *See Davis*, 583 F. App'x at 114. Accordingly, the Motion will be granted as to the Fourteenth Amendment due process claim in Count 7.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Count 7 will be GRANTED IN PART and DENIED IN PART, in that the Motion will be granted as to the Fourteenth Amendment due process claim, which will be dismissed, but denied as to the First Amendment retaliation claim. A separate Order shall issue.

Date:   August 1, 2025



THEODORE D. CHUANG
United States District Judge